## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIE McKAY, Jr.

     Plaintiff,

*v*.                                    CASE NO. 08-CV-14530

COMMISSIONER OF                  DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

     Defendant.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

I.   **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Remand be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.  REPORT

### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits.  This matter is currently before the court on cross-motions for summary judgment.  (Docs. 11,15.)

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 15, 55.)  Plaintiff's relevant employment history includes fifteen years as a truck driver and three years as a cab driver.  (Tr. at 70, 76.)

Plaintiff filed the instant claims on September 27, 2005, alleging that he became unable to work on March 23, 2005.  (Tr. at 55, 255.)  The claim was denied at the initial administrative stages.  (Tr. at 38, 259, 260.)  In denying Plaintiff's claims, the Defendant Commissioner considered affective disorder (bipolar disorder) and personality disorder as possible bases of disability.  (*Id.*)

On January 22, 2008, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") S. N. Willett, who considered the instant application for benefits *de novo*.  In a decision dated April 24, 2008, the ALJ found that Plaintiff was not disabled as he could return to his prior work as a cab driver and truck driver.  (Tr. at 12-23.)  Plaintiff requested a review of this decision on May 6, 2008.

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 29, 2008, when the Appeals Council

denied Plaintiff's request for review.  (Tr. at 4-6.)  On October 24, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  *See also Cruse*

3

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545.  The scope of the court's review is limited to an examination of the record only.  *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241.  *See also Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

4

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq*., and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than
12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity,
benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of
impairments that "significantly limits . . . physical or mental ability to do basic work
activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe
impairment that is expected to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed in the regulations, the
claimant is conclusively presumed to be disabled regardless of age, education or
work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits
are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work,
if other work exists in the national economy that plaintiff can perform, in view of his
or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes

a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d

at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

past relevant work . . . ." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).

If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner.  *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth

step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff has been treated for bipolar disorder and depression since 2004. (Tr. at 98-183.)

Plaintiff was hospitalized at the Hurley Medical Center in Flint, Michigan, in January 2004 because he had run out of medications and had been "manic" and because of left knee pain. (Tr. at 103, 109.) He was treated, prescribed Lithium Carbonate and Risperdal, and was discharged after nine days. (Tr. at 102.) Upon discharge, Plaintiff was to receive follow-up psychiatric care with Catholic Charities in Hamilton Clinic and Plaintiff did so. (Tr. at 105, 113-78.) Plaintiff indicated in August 2003 that he did not need any help with daily activities, friendships, family relationships, community activities or safety concerns, that he needed some help with self-development, personal/family enrichment, and that he needed urgent help with housing, work, income and money management. (Tr. at 135.)

Plaintiff was again hospitalized for nine days in April 2005 for depression, including suicidal and homicidal ideation, following an evaluation at a hospital emergency room after an argument resulted in Plaintiff's being "beaten up." (Tr. at 180.) As of the day he was released, Plaintiff was "much improved," denied suicidal ideation, and had no auditory hallucinations or negative thoughts. (Tr. at 180.) It was again recommended that Plaintiff continue follow-up care with Community Mental Health. (*Id.*)

Plaintiff indicated that he does "fairly well" with changes in routine, handles stress "fairly" and that he "manage[s] to get along" with authority figures, although he once had a problem with a supervisor.  (Tr. at 90.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") and was diagnosed with no Axis I-IV mental impairments and an adequate level of psychological functioning at Axis V.  (Tr. at 187.)  A Psychiatric Review Technique ("PRT") completed in December 2005 diagnosed Plaintiff with affective disorders (Tr. at 188); specifically, disturbance of mood, accompanied by full or partial manic or depressive syndrome, and bipolar syndrome with a history of episodic periods.  (Tr. at 191.)  As to the "B" criteria, Plaintiff was found to be moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace.  (Tr. at 198.)  As far as "episodes of decompensation, each of extended duration," he was found to have had "one or two."  (*Id.*)  As to the "C" criteria, Plaintiff was found to have a medically documented history of affective disorders that "has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  (Tr. at 199.)  Another PRT completed in February 2006 confirmed the diagnoses of the earlier PRT (Tr. at 244), and was consistent with the findings of the earlier PRT as to the "B" criteria (Tr. at 251), but found there were no "C" criteria present.  (Tr. at 252.)

Plaintiff also received care from Genessee County Community Mental Health on a regular basis and was assessed in February 2006.  (Tr. at 209-36.)  At that time, Plaintiff was found to be of good hygiene and in a good mood; he stated that he was mildly depressed once in awhile, that he had not been getting upset or angry easily, and that he was sleeping and eating well.  (Tr. at 209.)  No problems were noted under Axis IV.  (Tr. at 210.)

8

A Mental Residual Functional Capacity ("RFC") Assessment conducted in July 2006 concluded that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to interact appropriately with the general public. (Tr. at 237-38.) Plaintiff was not found to be significantly limited in any other areas. (*Id.*)

Plaintiff testified at the administrative hearing that he returned to work at a temporary agency doing general labor in September 2006, and was still working, performing tasks such as separating metal from tires and other trash, shoveling, and driving a wrecker. (Tr. at 267-68, 270.)

The ALJ asked the Vocational Expert ("VE") to consider a person with Plaintiff's background, who could not perform work that required more than occasional public contact, who should work alone, and whose work should be limited to simple, repetitive tasks. (Tr. at 278.) The VE testified that bus or cab driving would not be appropriate because of the required regular public contact but that Plaintiff could perform the job of truck driver. (Tr. at 279.) The VE further testified that janitorial work, laundry worker, and dishwasher positions would also be appropriate and that these jobs exist in significant numbers in the local and regional economy. (Tr. at 279-80.) In response to Plaintiff's counsel's questions, the VE added that repeated absences would not be tolerated in such jobs and that if an individual's concentration were impaired 20% of the time, i.e., one workday per week, that limitation would preclude employment. (Tr. at 283-84.)

E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 23, 2005, and through August 2006, because the claimant resumed substantial gainful activity in September 2006. (Tr. at 18.) At step two, the ALJ found that Plaintiff's bipolar disorder was

"severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 19.)  At step four, the ALJ found that Plaintiff has the residual functional capacity to perform his past relevant work as cab driver and truck driver and a full range of work at all exertional levels with the non-exertional limitation that Plaintiff not perform work which requires public contact and that work be limited to simple and repetitive tasks.  (Tr. at 19, 21.)  Thus, the ALJ found that Plaintiff was not disabled.  (Tr. at 23.)

### F.    Analysis and Conclusions

### 1.    Return to Prior Work

As noted, the ALJ concluded that Plaintiff had the ability to return to his prior work.  (Tr. at 21-22.)  This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability.

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work."  20 C.F.R. § 416.960(b).  "If you can still do this kind of work, we will find that you are not disabled."  20 C.F.R. § 404.1520(f).  "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'"  *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT").[2]  *Bauer v. Barnhart*, 168 Fed.

_____

[2]I note that the DOT is available on Westlaw (database identifier:  DICOT).

10

App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ presented an inaccurate hypothetical to the VE because, although the ALJ noted that Plaintiff should be restricted to simple and repetitive tasks that do not require public contact, the VE's response was contradictory because the job of truck driver is considered semi-skilled whereas the limitation to simple and repetitive tasks would be unskilled work. (Doc. 11at 7.) In addition, Plaintiff argues that the limitation to simple and repetitive tasks does not "properly account for the moderate restriction in Plaintiff's ability to concentrate." (*Id.*) Finally, Plaintiff argues that the ALJ's failure to ask the VE whether his testimony was consistent with the DOT requires reversal under S.S.R. 00-4p. (Doc. 11 at 11-12.)

I suggest that substantial evidence supports the ALJ's conclusion that Plaintiff is able to return to his past relevant work as a truck driver. I further suggest that assuming, *arguendo*, that

substantial evidence did not support the finding that Plaintiff could return to his past work as truck driver, as noted by the Commissioner, substantial evidence supports the ALJ's alternative finding under Step Five that Plaintiff could perform a significant number of other semiskilled jobs that are limited to simple, repetitive tasks.  (Doc. 15 at 9-10.)  I suggest that substantial evidence supports this alternative Step Five conclusion since it incorporates the restrictions emphasized by Plaintiff.  *See Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 188-89 (6th Cir. 1990) (substantial evidence supported conclusion of non-disability under alternate Step Five findings where alternate findings asked VE to assume limitations were true).

I further suggest that the ALJ's failure to precisely follow Social Security Rule 00-4p[3] does not undermine substantial evidence where, as here, Plaintiff has not alleged any conflict between the VE and the DOT.  Rule 00-4p requires the ALJ to ask the VE if the evidence conflicts with information provided in the DOT.  (Dkt. 10 at 12.)  The Rule is titled "resolving conflicts in occupational information," and is for use "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT."  I therefore suggest that, since there is no unresolved conflict, the ALJ's failure to ask the VE whether his testimony is consistent is not reversible error or even error requiring remand.  *See Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (unpublished) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (unpublished) (where question posed to VE accurately reflected the plaintiff's limitations, the plaintiff's contention that the ALJ erred in failing to inquire into possible conflicts was without merit).

---

[3]I note that the VE did refer to the DOT.  (Tr. at 272.)

Finally, I suggest that the ALJ's findings accurately portrayed Plaintiff's individual impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself that he takes care of his own personal hygiene, cooks, grocery shops, drives, watches television, does laundry, washes dishes, does yard work, and gets together with friends.  (Tr. at 84-88.)  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
Dated: July 27, 2009                                      United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served upon counsel of record via the Court's ECF System.

Date:  July 27, 2009                    By____s/Patricia T. Morris_____
                                        Law Clerk to Magistrate Judge Binder